UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MICHAEL HOULIHAN, individually )
and on behalf of all others )
similarly situated, )
) Civil Action No.
) **05-CV-2338**
)
Plaintiffs, ) **CLASS ACTION**
) **COMPLAINT**
vs. )
)
UNUM LIFE INSURANCE ) **Jury Trial Demanded**
COMPANY OF AMERICA and UNUM )
PROVIDENT CORPORATION, )
)
Defendants. )
)

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

### INTRODUCTION

1. This action is brought pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1132).

2. Count I of this Action, brought by Plaintiff, individually, alleges that Defendant wrongfully terminated Plaintiff's long-term disability benefits and seeks damages pursuant to ERISA § 502(a)(1)(B). Counts II and III, brought on behalf of Plaintiff, individually, and as a class action on behalf of all others similarly situated, alleges that Defendant wrongfully withheld long-term disability benefit payments to the Plaintiff and the Class, as defined herein, by failing to pay Plaintiff and members of the Class for their entire "period of disability."

3. The allegations of the Complaint are based on actual knowledge as to Plaintiff's own actions, and on information and belief as to all other allegations, which information and belief is based on the investigation conducted by and through Plaintiff's counsel.

4. The Class includes all persons: i) who are the beneficiaries of long term disability policies issued by UNUMProvident's Insuring Subsidiaries (as defined herein) that were governed by ERISA which provided that the long term disability plans would pay a monthly benefit for a period of total disability and which provided for an "Elimination Period" (as defined herein); and ii) who were paid some long-term disability benefits but were not paid long-term disability benefits that accumulated during the Elimination Period, as required by the Policies (the "Policies"), during any portion of the period February 22, 1999 through the date on which Defendant's wrongful conduct ceases, inclusive (the "Class" and the "Class Period," respectively).

5. UNUMProvident and its insuring subsidiaries willfully and wrongfully breached the terms and conditions of the Policies issued to Plaintiff and the Class and thereby violated ERISA during the Class Period by: i) wrongfully terminating Plaintiff's long-term disability benefits, as alleged in Count I; and ii) uniformly failing to honor provisions of the Policies which provided that benefits will be paid for the "period of total disability," as alleged in Counts II and III.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and specifically, ERISA § 502(e)(1) (29 U.S.C. §1132(e)(1)).

7. Venue is properly laid in this district pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because Defendant resides in this judicial district, is subject to personal jurisdiction in

2

this judicial district and/or maintains contacts in this judicial district sufficient to subject it to personal jurisdiction.

## PARTIES

**Plaintiff**

8. Plaintiff Michael Houlihan ("Plaintiff" or "Houlihan") is a resident of the County of Queens and a citizen of the State of New York.

9. On or about July 1, 1995, Defendant Unum Life Insurance Company of America issued to Chubb & Son, Inc. ("Chubb"), Houlihan's employer, a long-term disability income policy bearing Policy No.: 105878 (the "Policy"), annexed hereto as Exhibit A.

10. The Policy was issued for the benefit of certain eligible employees of Chubb in exchange for payment of premiums by such eligible employees. Ex. A at Section I, L-PS-3.

11. Houlihan was an employee of Chubb and eligible for disability benefits under the Policy.

12. The Policy states that, inter alia, disability insurance payments would be made to Houlihan in the event he became disabled due to injury or sickness. Ex. A at Section IV, L-BEN-1. The amount of benefits Houlihan could receive was based upon a percentage of his basic monthly earnings, if applicable, up to a maximum benefit of $7,5000 per month, less other income benefits, if applicable. Ex. A at Section IV, L-BEN-1, L-BEN-3, L-PS-1.

13. On or about November 8, 2000, during a period within which Houlihan was an eligible employee, Houlihan became disabled within the meaning and pursuant to the terms of the Policy.

14. Houlihan complied with all relevant terms and conditions of the Policy.

3

15. Houlihan filed a claim, cooperated with Defendants, provided proper proof of loss, and otherwise complied with the Policy terms and conditions regarding the filing of the claim for disability insurance. Defendants acknowledged that Houlihan's date of disability was November 8, 2000.

16. Houlihan submitted his application for long-term disability benefits on or about March 14, 2001. Houlihan was approved for long-term disability benefits on July 6, 2001 but was only paid long-term disability benefits from May 8, 2001 through March 10, 2004 in the amount of $3,379.31 per month.

17. Defendants failed to pay any long-term disability benefits arising under the terms of the Policies to Houlihan, or any member of the Class, that accumulated during the Elimination Period (as defined herein).

18. Defendants, by way of correspondence to Houlihan on March 10, 2004, notified Houlihan that Defendants were terminating the payment of long-term disability benefits arising under the terms of the Policy. The termination of these benefits on March 10, 2004 was willful and wrongful, as set forth more fully in Count I.

**Defendants**

19. Defendants UNUMProvident Corporation ("UnumProvident") is a publicly owned insurance holding company formed by a June 30, 1999 merger of Unum Corporation of Portland Maine and Provident Companies, Inc., of Chattanooga, Tennessee. The merger combined the nation's two leading disability insurers into the largest such insurer of its kind in the United States.

4

20. UnumProvident is a Delaware corporation with its corporate headquarters in Chattanooga, Tennessee. Common stock of UnumProvident is traded on the New York Stock Exchange under the stock symbol UNM.

21. According to UnumProvident's most recent 10-K filed on March 12, 2004, UnumProvident is the parent holding company for a group of insurance and non-insurance companies that collectively operated throughout North America and the United Kingdom. Through these subsidiaries, UnumProvident provide a wide range of group and individual insurance products including disability insurance, life insurance, long-term care insurance, and other payroll-deducted voluntary benefits plans offered by employers to their employees.

22. Defendant Unum Life Insurance Company of America is an issuing subsidiary of Defendant UnumProvident doing business in New York, with its principal place of business in Portland, Maine.

23. Defendant UnumProvident and Defendant Unum Life Insurance Company of America and Defendant UnumProvident are collectively referred to as "Defendants".

24. Effective January 1, 2003, UnumProvident's reporting segment includes the following five segments: "Income Protection," "Life and Accident," "Colonial," "Other," and "Corporate." The "Income Protection" segment includes insurance for loss of income due to either sickness or injury or the loss of two or more "activities of daily living," disability management services, and customized disability programs. Included within this segment are group long-term and short-term income protection insurance, individual income protection insurance, and group and individual long-term care insurance, as well as various disability management services and programs.

25. Group long-term and short-term income protection comprises the majority of the "Income Protection" segment, with $3,033.8 million of premium income of 2003. Individual income protection generated $1,527.1 million of premium income in 2003.

26. Group long-term and short-term income protection products are sold to employers for the benefit of employees. Group long-term income protection provides employees with insurance coverage for loss of income in the event of extended work absences due to sickness or injury. The benefits are limited to specified maximums as a percentage of income.

## SUBSTANTIVE ALLEGATIONS

27. Upon information and belief, the administration of claims and decisions regarding disability benefits under the Polices was implemented, coordinated, designed and/or instituted by Aetna.

### Long-Term Disability Plan Provisions

28. The Policy, which is an employee welfare benefit plan within the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A), is attached hereto as Ex. A.

29. According to the Policy, "When company [Unum Life Insurance Company of America] receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician the company will pay the insured a monthly benefit after the end of the Elimination Period. The benefit will be paid for the period of disability if the insured gives to the company proof of continued:

    1. disability; and
    2. regular attendance of a physician. Ex. A at L-BEN-1.

30. Pursuant to the Policy, while monthly benefits may be reduced by the receipt of "other income benefits," as defined by the terms of the Policy, one is entitled to receive, at a minimum, the "Minimum Monthly Benefit" which is defined as "[t]he greater of:

    a.    $100.00; or
    b.    10% of the monthly benefit before deductions for other income benefits. Ex. A at Section I, L-PS-1 -L-PS-2.

31. As defined in the Policy, a period of "Disability" starts, among other things, when "the insured cannot perform such of the material duties of his regular occupation." Ex. A at Section II, L-DEF-5.

32. While the policy requires that one remain disabled for a period of time before benefits start (the "Elimination Period"), the Policy further provides that once the Elimination Period is satisfied, the benefit "[w]ill be paid for the period of disability..." Ex. A at Section IV, L-BEN-1.

33. Based on the foregoing provisions, while Defendant's obligation to disburse payments did not arise until satisfaction of the Elimination Period, the language of the Policy makes clear that Defendants had a duty, pursuant to the terms of the Policy, to pay Plaintiff and members of the Class long-term disability benefits for "a period of disability," commencing on the first day of disability, as defined in the Policy.

34. The provision contained in the Policy providing that benefits will be paid for "a period of total disability" required that Defendant pay Plaintiff and members of the Class for the benefits accumulated from the commencement of the "period of disability" through the end of the Elimination Period, which, in Plaintiff's case, was from November 8, 2000 until May 7, 2001. Defendant, however, refused to pay Plaintiff and failed to pay members of the Class, benefits that

7

accumulated from the commencement of the "period of disability" through the end of each Class member's Elimination Period.

35. Despite the provision contained in the Policy providing that benefits will be paid for "a period of total disability," Defendants willfully, wrongfully and uniformly breached and continues to breach the express terms and conditions of the Policy by refusing to pay benefits accumulated during the Elimination Period.

36. Upon information and belief, the Policies are governed by ERISA and contain the same or similar language concerning the payment of long-term disability benefits.

37. Upon information and belief, Defendants have never paid benefits that accumulate during the Elimination Period to any Class member.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings Counts II and III pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all persons: i) who are the beneficiaries of long term disability policies issued by Defendants that were governed by ERISA containing provisions that state a benefit will be paid for the period of total disability and which provided for an Elimination Period and ii) who were paid some long-term disability benefits but were not paid long-term disability benefits that accumulated during the Elimination Period, as required by the Policies, during any portion of the period from February 16, 1999 through the date on which Defendants wrongful conduct ceases, inclusive.

39. Plaintiff meets the prerequisites to bring this action on behalf of the Class because:

(a) Numerosity: The Class consists of thousands of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable.

        While the exact number of Class members is unknown and can only be ascertained via discovery, Plaintiff believes that there are thousands of Class members.

(b)     Commonality: There are questions of law and fact common to the Class, including:

    (i)     Whether Defendants uniform practice of failing to pay benefits that accumulate during a Elimination Period violated ERISA;

    (ii)     Whether Class members have sustained damages and the correct measurement of those damages;

    (iii)     Whether Defendants breached the terms of the Policies;

    (iv)     Whether Defendants, in failing to pay Plaintiff and members of the Class, benefits that accumulated during the Elimination Period, acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief.

(c)     Typicality: Plaintiff's claims are typical of the claims of the Class because Plaintiff and members of the Class each sustained damages arising out of Defendants' wrongful conduct as complained of herein; and

(d)     Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the Class as a whole, and has engaged competent counsel, highly experienced in class actions, ERISA, and complex litigation, to ensure protection of the interests of the Class as a whole.

40. As an ERISA action, this action is suited for class certification pursuant to Fed. R. Civ. P. 23(b) because: i) the prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants; iii) Defendants, in failing to pay Plaintiff and members of the Class benefits that accumulated during the Elimination Period, acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief; and iv) questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

**For Relief Sought Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

**(On Behalf Of Plaintiff, Individually)**

41. The allegations of paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

42. At all times mentioned herein, Houlihan was an employee eligible for disability benefits and is an insured under the Policy issued by Defendant Unum Life Insurance Company of America.

43. The Policy provides, *inter alia*, that long-term disability insurance payments will be made to Houlihan in the event that he "[c]annot perform each of the material duties of his regular occupation" because of injury or sickness. Ex. A at Section II, L-DEF-5. In such an event, the Policy provides that monthly benefits are to be payable to Houlihan in the amount of 70% of his basic monthly earnings, reduced by other income benefits for which Houlihan may be eligible.

44. The Policy defines other income benefits, in relevant part, to be "The amount for which the insured is eligible under: 1.a. Worker's or Workmen's Compensation Law; 5. The amount of disability benefits. . . under the United State Social Security Act." Ex. A at Section IV, L-BEN-2 and L-BEN-3.

45. On November 8, 2000, during the period within which the Policy was in full force and effect, and while Houlihan was an eligible employee, he became disabled within the meaning and pursuant to the terms of the Policy.

46. As of this date, Houlihan continues to be disabled in that he is unable to perform the material duties of his regular occupation.

47. Houlihan's disability is caused primarily by chronic pain in his groin from an entrapped nerve.

48. Houlihan filed a claim, cooperated with Defendants, provided proper proof of loss, and otherwise complied with the Policy terms and conditions regarding the filing of a claim.

49. On or about July 6, 2001, Defendants commenced disability payments to Houlihan, retroactive to May 8, 2001.

50. Based upon Houlihan's prior basic monthly earnings and the provisions of the Policy, the monthly benefit payable to him was a sum not less than $3,379.31.

51. Despite Houlihan's continuing disability, Defendants terminated payments to Houlihan on March 10, 2004 and continue to refuse to pay long-term disability benefits pursuant to the Policy, although payment thereof has been duly demanded.

52. The refusal on the part of Defendant is a willful and wrongful breach of the Policy's terms and conditions.

53. Long-term monthly disability benefits to Houlihan continue to be due and payable by Defendants with the passage of each month.

54. Houlihan has exhausted his administrative remedies pursuant to ERISA and/or the conditions of the employee benefit plan with regard to allegations set forth in Count I.

55. Upon information and belief, arrears are now due and owing from March 11, 2004, to the present.

### PRAYER FOR RELIEF FOR COUNT I

Plaintiff prays that he may have an order and/or judgment, pursuant to ERISA § 502 *et seq.*, determining that:

i) Plaintiff is disabled pursuant to the language and within the meaning of the Policy in that he cannot perform each of the material duties of his regular occupation;

ii) Defendants must pay all long-term disability benefits in arrears due and owing since the termination of benefits, plus interest, less any applicable "other income benefits";

iii) Defendant's obligation to pay long-term disability benefits to Plaintiff shall continue as long as he remains disabled, subject to the terms of

and the applicable benefit period contained in the Policy;

iv) Plaintiff shall be entitled to recoup his attorney's fees, as well as all other costs and disbursements of this action;

v) Plaintiff may return to this Court, upon motion, to seek further relief in the event that it becomes necessary; and

vi) That the Plaintiff have such other and further relief as the Court may deem just and proper.

## COUNT II

### For Relief Sought Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)
### (On Behalf Of Plaintiff, Individually, And A Class Of All Other Similarly Situated Individuals)

56. The Allegations of paragraphs 1 through 55, except those that are particular to Count I, are re-alleged and incorporated herein by reference.

57. Despite the provision contained in the Policies stating that benefits will be paid for the "period of total disability," Defendants willfully, wrongfully and uniformly breached and continue to breach the express terms and conditions of the Policies by failing to pay long-term benefits accumulated during the Elimination Period as stated in the Policies.

58. Defendants have willfully, wrongfully and uniformly failed to honor their long-term disability benefit payment obligations under the Policies and Plaintiff and the Class members have suffered monetary damages as a result thereof.

59. Houlihan has exhausted his administrative remedies pursuant to ERISA and/or the conditions of the employee benefit plan with regard to allegations set forth in Count II.

## COUNT III

### For Relief Sought Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)
### (On Behalf Of Plaintiff, Individually, And All Others Similarly Situated)

60. The allegations of paragraphs 1 through 59, except those that are particular to Count I, are re-alleged and incorporated herein by reference.

61. By virtue of the conduct described above, Defendants breached and continue to breach the Policies by failing to pay benefits that have accumulated during the Elimination Period. As a result of the ongoing breaches of the Policies, as described above, Plaintiff and members of the Class have been harmed, continue to be harmed, and will be harmed into the future, due to the acts or omissions detailed above.

62. Plaintiff and the Class members are entitled to appropriate equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to obtain appropriate injunctive relief immediately stopping the ongoing breaches that are causing ongoing harm to Plaintiff and members of the Class.

63. Houlihan has exhausted his administrative remedies pursuant to ERISA and/or the conditions of the employee benefit plan with regard to allegations set forth in Count III.

### PRAYER FOR RELIEF FOR COUNTS II AND III

Plaintiff prays that this Court:

a. Certify this action as a class action under Rule 23;

b. Order Defendants to pay Plaintiff and members of the Class all long-term disability benefits that accumulated during their respective Elimination Periods plus interest, minus any applicable "other income benefits" but in no event less than the "Minimum Monthly Benefit" of $100 or 10% of the gross monthly benefit, whichever is greater.

    c.    Award Plaintiff and the Class members injunctive relief, redress, or other appropriate equitable relief whereby Defendants are ordered to immediately cease withholding all such benefits;

    d.    Award to Plaintiff reasonable costs and attorney's fees; and

    e.    Grant such other relief as may be just and proper.

DATED: February 23, 2005

By: _____

Gina M. Tufaro (GT 5419)
Paul O. Paradis (PP 9335)
ABBEY GARDY, LLP
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax:(212) 684-5191

Evan S. Schwartz
Richard J. Quadrino
Michail Z. Hack
QUADRINO & SCHWARTZ, P.C.
666 Old Country Road - Ninth Floor
Garden City, New York 11530
Tel.: (516) 745-1122
Fax.: (516) 745-0844

Peter Eikenberry
74 Trinity Place
New York, New York 10006
Tel.: (212) 385-1050
Fax.: (212 385-1017

## STATEMENT OF RELATED CASES

Pursuant to local Rule 15 of the Southern District of New York, <u>Michael Houlihan, et al. v. Unum Life Insurance Company of America, et al.</u> is a case related to <u>Virginia Loughman v. First Unum Life Insurance Company</u>, No. 7:04 CV 05494, as to deem it such serves the interests of justice and efficiency. Such cases arise out of the same transaction or occurrences and therefore, a substantial saving of judicial resources will result, the just efficient and economical conduct of the litigations would be advanced, and the convenience of the parties or witnesses would be served.